652 So.2d 836 (1994)
Germaine BERRY, Appellant,
v.
STATE of Florida, Appellee.
No. 93-1817.
District Court of Appeal of Florida, Fourth District.
December 21, 1994.
Opinion Granting Rehearing March 8, 1995.
*837 Richard L. Jorandby, Public Defender, and Cherry Grant and Frantz Vitel, Asst. Public Defenders, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Joan L. Greenberg, Asst. Atty. Gen., West Palm Beach, for appellee.
FARMER, Judge.
When the legislature enacts a statute that is clear and unambiguous, there is still the problem of how this clear statute will be applied to varying factual situations. The criminal kidnapping statute is a case in point. See § 787.01(1)(a), Fla. Stat. (1993).[1] The words are plain, and the meaning is clear. It is a first degree felony to use force to confine, abduct or imprison someone against their will in order to effectuate certain crimes. In terms of judging, the courts are not then construing the statute so much as they are deciding how the statute may be used in shifting factual contexts. Such a decision is Faison v. State, 426 So.2d 963 (Fla. 1983).
There the defendant was convicted of two counts of sexual battery, two counts of kidnapping and one count of burglary. The convictions arose from separate attacks on two women, one in an office and the other in her home. In the office attack, he dragged the victim from her desk in front of a large window to the rear of the office and there assaulted her; afterwards, he forced her into the restroom and assaulted her again. In the later home incident, he attacked the woman in her kitchen and dragged her down a hallway into a bedroom where he assaulted her. The district court affirmed the kidnapping convictions, and its decision was approved by the supreme court.
Starting with the statute itself, the court said that the crime of kidnapping means "to forcibly, secretly, or by threat confine, abduct, or imprison another person against his will with the intent to commit or facilitate the commission of any felony." The court had previously construed this text in Mobley v. State, 409 So.2d 1031 (Fla. 1982), where it had said: "[i]f construed literally this subsection would apply to any criminal transaction which inherently involves the unlawful confinement of another person, such as robbery or sexual battery." 409 So.2d at 1034. The Mobley court had explained that the kidnapping statute should not be applied to confinements *838 that were merely incidental during the commission of another crime; the confinement must have independent significance in order to support such a conviction. Thus in Mobley the court had held that the statute applied to the confinement of guards and a visiting lawyer in a prison cell during an attempted escape from prison.
In Faison, the supreme court faced the argument that the kidnappings were "merely incidental to and were not materially different from the detention necessarily involved in the course of the sexual batteries." Id. To deal with that contention the court turned to Harkins v. State, 380 So.2d 524 (Fla. 5th DCA 1980), where the fifth district confronted the same argument in a case involving sexual battery and kidnapping convictions. Justice McDonald echoed Mobley when he noted that the fifth district had itself reasoned in Harkins that if the kidnapping statute were literally applied "it would convert every first-degree robbery and every forcible rape into two life felonies." Faison, 426 So.2d at 965. To eliminate that unintended effect, Faison adopted the same test used in Harkins, namely that the kidnapping statute does not include movement or confinement that is "inconsequential or inherent in the nature of the felony." Faison, 426 So.2d at 966; Harkins, 380 So.2d at 528.
The problem with this "test" is that it does not assist judges in determining just which confinements are "inconsequential or inherent in the nature of the felony," especially when the felony is robbery or sexual battery  both of which, as the supreme court itself has twice observed, involve some confinement. For the answer to that judicial conundrum, one can turn only to the supreme court's frequent cases on the subject.
Where the charge is kidnapping, one must first ask whether the facts show conduct that can reasonably be described as "confining, abducting or imprisoning."[2] In this case, the facts are that defendant and two other persons inveigled their way into the apartment of one Salako where they pulled out weapons and proceeded to rob him. A visiting friend was tied up with phone cord and left where he was found in the apartment. After they completed the robbery, they also tied up Salako and left him pretty much where they had found him. Salako freed himself almost immediately after they had departed and summoned the police. The whole episode was over within less than 30 minutes.
To us, these facts could not possibly constitute either abducting or imprisoning. And so the question is whether they amount to that kind of confinement embraced by the kidnapping statute. No one would dispute that the act of tying up someone entails to some degree the confinement of the one tied up. Hence, there is a logical foundation for the homily that "if you tie 'em up you've kidnapped 'em." It appears, however, that the supreme court itself has bestowed its nihil obstat on this homespun wisdom.
In Walker v. State, 604 So.2d 475 (Fla. 1992), the robber of a convenience store ordered all of the occupants to go to the rear of the store and lie down on the floor. Some moved 30-40 feet, while one moved 10 feet. At trial the robber testified that he ordered the occupants around to facilitate his escape and reduce the risk of getting caught. The supreme court ruled that these movements were too slight, that they were inconsequential and merely incidental to the robberies to support a conviction for kidnapping. In reaching its decision, the court considered *839 Kirtsey v. State, 511 So.2d 744 (Fla. 5th DCA 1987), because of direct conflict with the district court decision in Walker.
In Kirtsey, the robbers of a restaurant had tied up one employee while the other opened the safe. The movement and confinement of the employees was limited to the interior of the restaurant. The district court in Kirtsey held that the movements and confinement were too slight to support the conviction. In comparing Walker with Kirtsey the court said: "[a]t least with respect to the employee who was not tied up, the pertinent facts of Kirtsey are virtually the same as those in [Walker]." [e.s.] Walker, 604 So.2d at 477. Continuing, the court said:
"We do not believe that the facts of this case fulfill the first prong of the Faison analysis. The limited movement and confinement of the four occupants within the interior of the store were not significant. See Jackson v. State, 436 So.2d 1101 (Fla. 4th DCA 1983). Unlike in Faison the victims were not dragged from room to room. They were not bound and blindfolded for half an hour as in Marsh v. State, 546 So.2d 33 (Fla. 3d DCA 1989). They were not barricaded inside the bathroom like in Johnson v. State, 509 So.2d 1237 (Fla. 4th DCA 1987), nor were they taken out of the store and put in the restroom located in the rear as in Ferguson [v. State, 533 So.2d 763 (Fla. 1988)]. Further, the facts relied upon to support the kidnapping occurred within a matter of seconds." [e.s.]
Walker, 604 So.2d at 477. One should study the facts and dispositions in the cases used by the Walker court to learn whether binding or tying up a victim may alone bear a kidnapping conviction.
In Jackson, where the kidnapping was reversed, the robbery victim was forced from the hotel hallway into his own room where the assailants took the guests' property and immediately left. In Marsh, the victim was "bound, gagged, blindfolded, and wrapped in blankets for up to half an hour" while the defendants ransacked the apartment, stealing money and housekeys, and the kidnapping was affirmed. In Johnson, where we upheld the kidnapping conviction, the robber of a convenience store forced the cashier into a bathroom at the rear of the store, and the robber then barricaded the bathroom by tying shopping carts to the door. In Ferguson, where the kidnapping conviction was approved, the robbers of an Arby's restaurant forced the employees into a restroom located in the rear of the store and told the victims to stay inside, which they did for about one minute whereupon they opened the door and saw the defendant riding off on a bicycle.
Recurring to Walker's analysis of Kirtsey, it is obvious that the court did not entirely approve of Kirtsey. Only as to the victim who was not tied up did the Walker court find common ground. But the victim who was tied up in Kirtsey was plainly not likened to the unbound victims in Walker, as to whom the kidnapping conviction was disapproved. From the additional cases discussed in Walker along with Kirtsey, there appears a chain of logic that will uphold a kidnapping conviction where the victims are bound during the robbery. Thus, "if you tie 'em up you've kidnapped 'em."[3]
In this case, although the movement of the victims within the apartment itself was inconsequential, their binding took on independent significance and was clearly intended to make the commission of the robbery easier and to make more difficult the detection of the robbers. In short, focusing our attention less on the what the supreme court said in Faison and more on what it has done in later cases, especially Walker, we affirm the kidnapping convictions in this case. We also certify that our decision today conflicts with Brinson v. State, 483 So.2d 13 (Fla. 1st DCA 1985), rev. denied, 492 So.2d 1335 (Fla. 1986).
Berry also appeals that part of the sentence imposing a mandatory minimum period for using a firearm during the robbery. Here the information charged him and others with "robbery with a firearm." The verdict *840 found him guilty "as charged in the information" but did not specifically state that the jury found that he had been the one to use the firearm. Although Berry argues that Hough v. State, 448 So.2d 628 (Fla. 5th DCA 1984), requires that the verdict must contain a specific finding as to the use of the firearm to justify the mandatory minimum, in the next breath he concedes that he was the one holding the gun during the robbery. We thus find no error in the sentence enhancement for firearm usage.
AFFIRMED; CONFLICT CERTIFIED.
GUNTHER, J., concurs.
KLEIN, J., dissents with opinion.
KLEIN, Judge, dissenting.
In the present case the robbery victims were left tied up in the same room of an apartment where the robbers found them, and they broke free immediately after the robbers left. In concluding that the mere tying up of these robbery victims constitutes kidnapping, the majority has, in my opinion, misinterpreted Walker v. State, 604 So.2d 475 (Fla. 1992), which I construe as approving Kirtsey v. State, 511 So.2d 744 (Fla. 5th DCA 1987).
In Kirtsey, the defendant and a companion robbed a Pizza Hut after closing, tying up one of the employees and forcing the other to open the safe. The movement and confinement of the employees were limited to the interior of the restaurant. The Fifth District reversed the kidnapping conviction on the ground that the confinement was slight and incidental to the robbery.
In Walker, the defendant robbed a convenience store, and ordered the four occupants to go to the back of the store and lie on the floor. Three of them moved 30 to 40 feet but did not lie down, and the defendant then left the store. Defendant's kidnapping conviction was affirmed on appeal. Walker v. State, 585 So.2d 1107 (Fla. 2d DCA 1991). The supreme court granted review in Walker because of its conflict with Kirtsey. In approving Kirtsey, and quashing Walker, the supreme court said:
In Kirtsey, the defendant and a confederate forced their way into a restaurant as two employees were closing. One of the employees was tied up while the other was forced to open the safe and threatened with a gun. The movement and confinement of both employees were limited to the interior of the restaurant. The Third [sic] [Fifth] District Court of Appeal acknowledged that the acts were not inherent in the offense of robbery and arguably may have made the attempted robbery easier to commit. However, in reversing Kirtsey's kidnapping convictions, the court held that the acts were slight and merely incidental to the robbery. At least with respect to the employee who was not tied up, the pertinent facts of Kirtsey are virtually the same as those in the instant case. (Emphasis added).
The majority says it is "obvious" that the Walker court did not entirely approve Kirtsey. I disagree. The court's discussion of Kirtsey's conduct towards both employees (the one who was tied up and the one who was not) leads me to conclude that it approved Kirtsey in all respects. In addition, the court quashed Walker and did not disapprove any part of Kirtsey. The statement relied on by the majority at the end of the above quote from Kirtsey was simply for the purpose of comparing the facts in the two cases to demonstrate the conflict necessary for supreme court review. I therefore dissent.

ON MOTION FOR REHEARING
FARMER, Judge.
Appellant's motion for rehearing calls our attention to a misapprehension reflected in our opinion on the merits. Specifically, he asserts that we were wrong in stating that "he concedes that he was the one holding the gun during the robbery." Maj. Opin. at 839-840. Our misapprehension of concession resulted from a statement in appellant's brief, namely that "[a]ppellant, while holding a gun, directed a co-defendant to tie Mr. Laro up with a coat hanger and a phone cord." Initial Brief, at 2.
*841 Appellant now explains that this was never meant to be a concession that he actually had the gun, which was a disputed issue at trial. Rather, it merely reflected compliance with an appellant's duty to present the facts as they must have been resolved by the jury in favor of the prevailing party.[1] Actually, he contends, he did not then, and does not now, concede that he was the perpetrator who wielded the gun in question.
At the same time, he also calls our attention to the fact that the Information in this case did not allege that he was the one of the six perpetrators who held the gun. Instead, the charging document merely made a general allegation that "there was carried a firearm or other deadly weapon" during the course of the robbery, without any specification as to which of the six named individuals actually held the weapon.
As appellant correctly points out:
"before a trial court may enhance a defendant's sentence or apply the mandatory minimum sentence for use of a firearm, the jury must make a finding that the defendant committed the crime while using a firearm either by finding him guilty of a crime which involves a firearm or by answering a specific question of a special verdict form so indicating."
State v. Overfelt, 457 So.2d 1385, 1387 (Fla. 1984). Here the jury found appellant guilty of robbery with a firearm "as charged in the information." One can be found guilty of armed robbery without ever being in actual possession of a firearm. Rivas v. State, 591 So.2d 649 (Fla. 4th DCA 1991). Unless the charging document expressly states that the defendant had the firearm during the robbery, or the verdict form contains a special interrogatory finding that the defendant possessed the firearm, the court may not impose the three-year mandatory minimum sentence for use of a firearm. Id.; see also, Hough v. State, 448 So.2d 628 (Fla. 5th DCA 1984).
We thus grant rehearing and reverse that part of the sentences imposing the mandatory minimum sentences for use of a firearm. In all other respects our original opinion stands.
GUNTHER and KLEIN, JJ., concur.
NOTES
[1] Section 787.01(1)(a), Florida Statutes (1993), says:

"The term `kidnapping' means forcibly, secretly, or by threat confining, abducting, or imprisoning another person against his will and without lawful authority, with intent to:
1. Hold for ransom or reward or as a shield or hostage.
2. Commit or facilitate commission of any felony.
3. Inflict bodily harm upon or to terrorize the victim or another person.
4. Interfere with the performance of any governmental or political function."
[2] The legislature has also created the crime of false imprisonment. See § 787.02, Fla. Stat. (1993). The statute defines that crime as "forcibly, by threat, or secretly confining, abducting, imprisoning or restraining another person without lawful authority and against his will." [e.s.] Although the false imprisonment statute closely resembles the kidnapping statute, there are four  not three  kinds of forbidden conduct in the false imprisonment statute; the legislature has added restraining to the list of confining, abducting, or imprisoning. It seems obvious to us that tying up or binding a person is encompassed by the term restraining. Hence, the structure of these two statutes might lead one fairly to conclude that when the act of confining or imprisoning consists only of tying up the affected person, the crime committed is false imprisonment, not kidnapping. Because, as appears from later decisions however, the supreme court has made no such construction in spite of a clear opportunity to do so, lower court judges in this state are not free to place such a construction on these two statutes.
[3] Although we would ordinarily disdain the use of "litmus tests," to use the currently popular locution, a series of supreme court decisions can make certain facts dispositive in applying a statute to differing kinds of facts. That is, in effect, what we think the court has done.
[1] We commend counsel's punctilious compliance with this often shunned canon of appellate practice. Certainly, we would not wish to be understood as penalizing any lawyer who assiduously complies with this duty. Any reproach should go to the writer of the opinion, not the lawyer.

"The fault, dear Brutus, is not in our stars, But in our ourselves, that we are underlings."
W. Shakespeare, Julius Caesar, I, ii.