685 So.2d 17 (1996)
Charles GARVIN, Appellant,
v.
The STATE of Florida, Appellee.
No. 95-2051.
District Court of Appeal of Florida, Third District.
November 13, 1996.
Rehearing Denied January 15, 1997.
Bennett H. Brummer, Public Defender, and Jane D. Fishman, Special Assistant Public Defender, for appellant.
*18 Robert A. Butterworth, Attorney General, and Consuelo Maingot, Assistant Attorney General, for appellee.
Before SCHWARTZ, C.J., and COPE and FLETCHER, JJ.
FLETCHER, Judge.
Defendant Charles Garvin appeals his numerous convictions and his sentencing for a series of offenses occurring during an armed robbery of a restaurant. These offenses include armed kidnapping, burglary with an assault while armed and several counts of armed robbery. We affirm.
Garvin and other assailants commandeered a McDonald's restaurant during the lunch hour, using firearms to subdue and rob the employees, the customers and the restaurant. During this criminal episode, the restaurant manager, after seeing the assailants draw their weapons, exited the building for the purpose of getting to a telephone booth and calling for assistance. He was interrupted in this purpose by one of the assailants (who had been instructed by another), and was forced back into the restaurant at gunpoint. The assailants then proceeded in their various armed robberies.
On his appeal, Garvin has raised a number of issues. As to the conviction for armed kidnapping, he contends that the act of forcing the manager back into the restaurant at gunpoint was only a slight and inconsequential movement or confinement of the victim, merely incidental to the robbery. Thus, Garvin concludes, pursuant to the test set forth in Faison v. State, 426 So.2d 963 (Fla.1983), there was no kidnapping.[1]
We observe that the movement of the manager was not slight, inconsequential, or merely incidental to the other crimes, and was not inherent in the nature of the other crimes. The direct result of this separate act of moving the manager back into the restaurant at gunpoint was that he was kept from telephoning for help, thus the act substantially lessened the risk of detection. Obviously, had the manager made the telephone call for assistance, detection would have been immediate. The evidence passes the test of Faison.
Garvin also argues that his burglary conviction cannot stand as the restaurant premises were open to the public at the time the offense was committed. Citing section 810.02(1), Florida Statutes (1995), he wishes us to conclude that he is "exempt" from the burglary charge.
Section 810.02(1), Florida Statutes (1995) defines the crime of burglary as:
"entering or remaining in a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain."
It is undisputed that the restaurant was open to the public at the time of the invasion. It was the middle of the lunch hour and members of the public were there eating. However, pursuant to the burglary statute, once a consensual entry is made, a consensual "remaining in" begins. Here, the question for the jury to resolve was whether Garvin remained in the premises with the intent to commit an offense therein after the consent to remain in the restaurant had been withdrawn. As this Court stated in Ray v. State, 522 So.2d 963, 966 (Fla. 3d DCA), rev. denied, 531 So.2d 168 (Fla.1988):
"It is undeniably true that a person would not ordinarily tolerate another person remaining in the premises and committing a crime, and that when a victim becomes aware of the commission of a crime, the victim implicitly withdraws consent to the perpetrator's remaining in the premises."
We find it sensible that no victim consents to a person's remaining in the premises for the *19 perpetrator's purpose of committing a crime against that victim. Therefore the jury could have concluded that once the restaurant manager became aware that the assailants were committing a crime, the "remaining in" was no longer consensual. Indeed, even if further evidence of withdrawal of consent was required, the manager's leaving the building to telephone for assistance and the resulting kidnapping were supremely sufficient to show that the consent to remain had been withdrawn.
Garvin also argues that certain remarks made by the trial court to the prospective jury panel deprived him of his right to due process of law by impermissibly instructing the prospective jury that it would be able to convict Garvin on a "mere mathematical probability of guilt." We note, however, that the trial court's comments were "innocuous, unobjectionable and unobjected to below," see Arias v. State, 681 So.2d 845 (Fla. 3d DCA 1996), and thus could not be the basis for a reversal.
We have reviewed Garvin's final contentionsas to his sentencingand find them to be without merit.
The convictions and sentences are affirmed.
NOTES
[1] The test is found at Faison, 426 So.2d at 965: "[I]f a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:

(a) Must not be slight, inconsequential and merely incidental to the other crime;
(b) Must not be of the kind inherent in the nature of the other crime; and
(c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection."